SCHAAP *v.* FIRST NATIONAL BANK OF FORT SMITH.

Opinion delivered December 9, 1918.

1. BILLS AND NOTES—INDORSEMENT OF CHECK BY AGENT.—Under Neg. Inst. Act, § 21, an indorsement of the name of a principal on a check followed by the words "per E. H. S." gives notice that S. acted for his principal and not for himself.

2. PRINCIPAL AND AGENT—IMPLIED AUTHORITY TO INDORSE CHECKS.— The fact that an agent is authorized to make collections for his principal in checks does not establish his authority to indorse checks so taken in the name of his principal.

3. BANKS AND BANKING—UNAUTHORIZED INDORSEMENT OF CHECK.—
A bank collecting checks payable to plaintiff, which were without authority endorsed by plaintiff's collecting agent, is liable therefor to plaintiff if he was innocent of fraud of negligence, irrespective of the bank's good faith in paying check to another than plaintiff.

4. JUSTICES OF THE PEACE — JURISDICTION — CONTRACTS.—Suits on checks constituting separate causes of action in distinct contracts, each for a sum within the juristdiction of a justice of the peace, may be joined in one action, though their aggregate amount exceeds the jurisdictional amount.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; reversed.

### STATEMENT OF FACTS.

John Schaap brought suit in the municipal court of Texarkana, Arkansas, against the State National Bank of Texarkana, to recover on certain checks which he alleges belonged to him and which were collected by the bank and held by it after demand made by him for the amounts so collected. John Schaap also brought suit against the First National Bank of Fort Smith before a justice of the peace to recover upon certain checks of which he was the holder which had been collected by the bank and payment refused to him.

The material facts in each case are nearly the same and the issues of law raised by the appeal in number 5549 will be decisive of case number 5486. Therefore the cases were consolidated for the purpose of being briefed on appeal and one opinion will suffice for both cases. Each case was appealed to the circuit court. The facts upon which the cases were tried in the circuit court are substantially as follows: John Schaap resides in Fort Smith, Arkansas, and has there conducted for thirty-five years a wholesale drug business under the name of John Schaap & Sons Drug Company. E. H. Slates was employed by him as a traveling saleman from October, 1914, to March, 1916, inclusive. His duties were to sell drugs and collect past due accounts from customers; but he had no authority to indorse checks given in payment of ac-

counts or other indebtedness to the drug company. During the course of his employment, Slates received checks to the amount of over $3,000 which customers had given him and for which they had received no credit on the books of the drug company. Slates received many other checks given him by customers in payment of accounts due the drug company and he sent in these checks to the drug company. He also collected cash and remitted it to the drug company. His collections amounted to about five or six hundred dollars per week. During the latter part of March, 1916, John Schaap discovered that Slates had collected a check drawn in his (Schaap's) favor in payment of a drug account and had appropriated the proceeds to his own use. As soon as this was discovered Slates left the country and his present whereabouts are unknown. Prior to that time Slates was indorsing checks given to him by customers in payment of their accounts and collecting them and appropriating the proceeds to his own use. The extent to which Slates had done this was ascertained by investigation upon the part of Schaap after Slates had fled the country in the latter part of March, 1916.

In case Number 5486, the record shows that Slates at various times took checks given by seven different customers of the drug company in payment of their accounts to local banks and cashed them. These banks then sent the check to the State National Bank of Texarkana for collection and the bank collected them and appropriated the proceeds to its own use. Each of these checks was drawn to the order of John Schaap & Sons Drug Company, or John Schaap & Sons, and each was indorsed John Schaap & Sons Drug Company or John Schaap & Sons, "per E. H. Slates."

In case Number 5549, the record shows that Slates received checks for various amounts from sixteen customers of John Schaap in payment of their accounts to his drug company. Each of these checks was drawn in favor of John Schaap & Sons Drug Company, or John Schaap & Sons, and each was indorsed John Schaap &

Sons Drug Company, or John Schaap & Sons, "per E. H. Slates." Slates presented five of these checks at different times to the First National Bank of Fort Smith and the bank paid to Slates the several amounts for which these checks were drawn and he appropriated the money to his own use. The bank officials collected the amounts of these checks from the banks on which they were drawn. The remaining eleven checks were sent to the defendant bank for collection by other banks which had cashed them for Slates and which had sent them in to the defendant bank.

In case number 5486 the court directed a verdict for the defendant bank and the plaintiff has appealed.

In case number 5549, a jury was impaneled to try the case and the foregoing evidence was introduced before it. After the taking of the evidence was completed, counsel for both parties agreed to withdraw the case from the jury and to submit it to the court sitting as a jury. The plaintiff requested the court to make declarations of law which the court refused to make. The defendant also requested the court to make certain declarations of law, which the court refused to make. The court rendered judgment for the plaintiffs for the amount of the five checks which the bank had cashed for E. H. Slates and afterwards collected from the banks on which they were drawn; and rendered judgment in favor of the defendant as to the amounts collected by the defendant bank on the eleven checks sent to it by other banks which checks it had collected and accounted for to the banks which had sent them. This case is also here on appeal.

*Winchester & Martin,* for appellant.

1. Slates had no authority to sign appellant's name or to indorse and collect the checks. The bank is liable and the court erred in its instructions. Neg. Inst. Act, Acts 1913, §§ 23, 85; 129 Ark. 350; 98 *Id.* 1; 100 *Id.* 537; L. R. A. 1917 A. 145; 15 L. R. A. (N. S.) 519; Bowers on Conversion, §§ 54-57; 110 Ark. 578; 100 Am. Dec. 324, 452; 72 Ark. 504; 12 *Id.* 644.

See also 98 Ark. 1; 15 L. R. A. (N. S.) 519; 94 U. S. 343.

2. There is no question of privity here. Plaintiffs action is based on the fact that defendant has collected money due him and that the law implies a contract that it will pay it over to him. 110 Ark. 578; 11 *Id.* 270; 22 *Id.* 68; 65 *Id.* 222; 29 Minn. 238; 13 N. W. 42. Either that or as for conversion. The actions are closely akin. Trover is maintainable against a defendant who has converted a check, etc. 60 Am. St. 411.

3. Defendant was put on notice by the indorsement. Carelessness or negligence is inexcusable and indefensible. 97 U. S. 369.

4. It was error to refuse plaintiff's instructions. The checks belonged to plaintiff. They were not indorsed by him nor by one having authority. Defendant must take notice. Plaintiff was entitled to recover and the lower court erred. 73 S. W. 1129; 70 N. W. 34; 130 Am. St. 241; 13 L. R. A. (N. S.) 211; 98 Ind. 85; 1 Hill (N. Y.) 295; 6 Hun. (N. Y.) 124; 68 N. Y. 616; 19 Oh. St. 526; 131 S. W. 447; 47 *Id.* 234; 7 L. R. A. 93; 32 *Id.* 778; 155 N. W. 78; 20 Oh. St. 234; 17 N. Y. 207; 93 Am. St. 113; 10 *Id.* 249.

5. It was error to admit the two canceled checks of Boyer Drug Co. and statement of account of same. Only a question of law is presented. Defendant had notice of the forgeries and appellant should have judgment for the amount of the checks and interest.

*William H. Arnold,* for appellee. *W. H. Arnold, Jr.,* and *David C. Arnold,* of counsel.

1. Slates had authority to collect accounts and cash the checks. Where one of two innocent parties must suffer a loss, it should be borne by the one who put it in the power of the agent to commit the wrong. Appellant must be presumed to have known how the agent was handling the business. 129 Ark. 353. Slates did not violate his authority. He acted in the usual course of his authority from his employers and within its

scope. He had the right to collect and incidentally to cash checks. 49 Ark. 320; 48 *Id.* 145; 100 *Id.* 325; 46 *Id.* 216.

2. The payee of a check cannot sue the bank upon which it is drawn without the acceptance by the bank, and further the giving of the check does not operate as an assignment of funds in the bank to the credit of the drawer and the payment of the check upon a forged indorsement does not operate as an acceptance. There are cases holding to the contrary, but they are in conflict with the great weight of authority. The Arkansas decisions deny appellant's right to recover. No recovery can be had against a bank without notice. There was no conversion by appellee of appellant's money. If the money was not paid by the drawee bank upon a valid indorsement then the status of drawee's account remains unaffected. 94 U. S. 343; 98 Ark. 1. See also 100 Ark. 537; 202 S. W. 834; 15 L. R. A. (N. S.) 519; 69 Atl. 280; 71 Mo. App. 137; 143 Ill. App. 625.

3. The remedy is not against the bank but against the party drawing the checks. 129 Ark. 353.

*Harry P. Daily,* also for appellee.

1. The court had no jurisdiction. The jurisdiction of a justice of the peace is limited to $300.

2. Slates was authorized to cash the checks. Schaap is not entitled to recover from anyone, as he placed the opportunity in the hands of Slates to commit the fraud. He had the authority to sell and collect.

3. Schaap cannot recover from the bank. 98 Ark. 1; 100 *Id.* 537; 202 S. W. 834; 94 U. S. 343. The bank paid the checks to the holder and charged the drawer's account. Any loss should fall on him. 24 U. S. Lawy. Co.-Op. Ed. 229-231; 88 Tenn. 381; 7 L. R. A. 93.

4. The bank was neither the payee nor the bank to which Slates presented the checks for payment, but it merely acted as a conduit. This is the point as to eleven of the checks. Schaap cannot recover. 157 Pac. 202; L. R. A. 1917 A. 145; 70 Fed. 232; 100 Tenn. 187; 47 S. W.

234; 123 Tenn. 364; 73 S. W. 1129; 88 Tenn. 381; 7 L. R. A. 93. The cases cited for appellant do not apply. 69 Atl. 280 is against the weight of authority. 69 Atl. 280.

5. Schaap cannot sue the drawers of these checks. 129 Ark. 350; 171 Mass. 516; 110 App. Div. (N. Y.) 236; 186 N. Y. 611.

6. A recovery cannot be had on the eleven checks, nor on the five. See argument of co-counsel Mr. Arnold.

HART, J., (after stating the facts). The record shows that Slates had authority to sell drugs for the plaintiff and to collect past due accounts, either receiving payment therefor in money, or in the checks of customers drawn in favor of his principal. Slates indorsed the checks by writing his principal's name across the back thereof followed by the words, "per E. H. Slates." The indorsement "per E. H. Slates" did not purport to be his own indorsement but was notice to the defendant that Slates had acted for the plaintiff. See our Negotiable Instrument Act, Acts of 1913, p. 260 and Section 23 thereof.

But it is earnestly insisted by counsel for the defendant that the authority to collect past due accounts, either in money or by checks, carried with it the authority to indorse the checks received by him in payment of the accounts. The main purpose had in view was the collection of the accounts. This was accomplished when Slates had received the various checks payable to his principal. When Slates received them in payment of a debt due his principal, his duty as collector ceased except to transmit the checks to his principal. The indorsement of the checks was not a necessary incident to the collection of the accounts and his authority to receive checks, instead of cash, did not confer power to indorse the checks. It has been uniformly held that the fact that an agent authorized to make collections in checks as well as in money does not enlarge his authority to indorse checks so taken in the name of his principal. Daniel on Negotiable Instruments (6 Ed.), vol. 1, sections 290-291; *Jackson v. Bank* (Tenn.), 36 Am. St. Rpts. 81; *Deering* v. *Kelso*

(Minn.), 73 Am. St. Rep. 324; *Jackson Paper Mfg. Co.* v. *Commercial National Bank* (Ill.), 93 Am. St. Rep. 113; *Hamilton National Bank* v. *Nye* (Ind.), 117 Am. St. Rep. 333; *Dispatch Printing Co.* v. *National Bank of Commerce*, 124 N. W. (Minn.) 236, 50 L. R. A. (N. S.) 74; *The New York Iron Mine* v. *The First National Bank of Negaunee*, 39 Mich. 644; and *Graham* v. *U. S. Savings Institution*, 46 Mo. 186.

In *Jackson* v. *Bank, supra,* the court said: "No equitable considerations can be invoked to soften seeming hardships in the enforcement of the laws and rules fixing liability on persons handling commercial paper. These laws are the growth of ages and the result of experience, having their origin in necessity. The inflexibility of these rules may occasionally make them seem severe, but in them is found general security."

This court has recognized the desirability of having uniformity in the decisions of the courts of last resort in the various states on the subject of nogtiable paper. The question of whether the payee of the check may recover its proceeds from the bank which has cashed it, or which has collected it on an unauthorized indorsement, is presented in this court for the first time. The general rule on the question is stated by Morse on Banks and Banking (5 Ed.), vol. 1, sec. 284, p. 491, as follows: "If a negotiable instrument having a forged endorsement comes to the hands of a bank and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection."

Prof. Bolles in his article on the subject in 5 Cyc. 548, says that if a bank pays a check on a forged indorsement, this is no defense against a recovery by the rightful owner.

In the present case the money collected by the banks on the checks belonged to Schaap. The general rule is that an unauthorized indorsement is a nullity. The banks' position in law is the same as if they had taken

the checks belonging to Schaap and collected the money on them without any indorsement at all, and when without lawful right, the bank converted them into money, the proceeds were substituted for the checks and subject to Schaap's demand as his money. The banks held the checks for the plaintiff, Schaap, who was their lawful owner and they could not be exonerated from their obligation by paying the amount to another, who had never been authorized to receive it. In making such payment as well as in the collection of the money on the checks, in other instances, the checks being unindorsed by the plaintiff, the banks acted in hostility to the plaintiff's rights, so as to become liable to him for the loss so occasioned. This holding is in accord with the almost universal current of authority on the question. The cases are based upon the theory of ratification by the payee or owner of the check of its collection from the drawee, and that the collecting bank can then be held as for moneys had and received, and that the payment by the drawee bank to the collecting bank with the forged or unauthorized indorsement thereon is evidence that the check was accepted and paid by the drawee bank, which acts the payee ratifies. In other words, the true owner of a check, with a forged unauthorized indorsement may ratify the act of a bank, in receiving it, in that condition; and collecting the proceeds or paying them out without authority and yet not ratify the forged or unauthorized indorsement. In such cases the bank cannot avoid liability by showing that its conduct was governed by good faith and the payee is entitled to recover unless he has been guilty of fraud or negligence in the matter. *United States Portland Cement Co.* v. *United States National Bank of Denver* (Col.), L. R. A. 1917 A. 145; *Talbot* v. *Bank of Rochester,* 1 Hill (N. Y.) 295; *Johnson* v. *First National Bank,* 6 Hun. (N. Y.) 124, affirmed in 68 N. Y. 616; *Shaffer* v. *McKee,* 19 Ohio St. 526; *Buckley* v. *Second Natl. Bank,* 35 N. J. 400, 10 Am. Rep. 249; *Farmer* v. *Peoples Bank* (Tenn.), 47 S. W. 234; *Knoxville Water Co.* v. *East Tenn. Nat. Bank* (Tenn.), 131 S. W. 447; *Crisp* v. *State Bank* (N. D.), 155

N. W. 78; *Peoples Bank* v. *Franklin Bank* (Tenn.), 17
Am. St. Rep. 884 and note.

The only case holding to the contrary to which our
attention has been called is *Tibby Bros. Glass Co.* v.
*Farmers & Merchants Bank* (Penn.), 15 L. R. A. (N. S.)
519. In that case it was held that a bank which collects
checks cashed by it on forged indorsements is not liable
for any money had and received to the use of the payee.
The holding is based on the ground that since the checks
had not been accepted by the drawee, there was no privity
of contract between the bank and the payee which would
sustain an action, and that the action of the collecting
bank in cashing the checks placed it upon no different
ground than if it had been the drawee bank.

Counsel for the defendants recognize the majority
rule to be as stated in the opinion but they say that this
rule is contrary to the reasoning of our court in former
decisions bearing on the question. The cases referred to
are *Sims* v. *American Natl. Bank,* 98 Ark. 1.; *Rogers Com-
mission Co.* v. *Farmers Bank,* 100 Ark. 537; and *State,
use etc.* v. *Bank of Commerce,* 133 Ark. 498, 202 S. W.
834. These cases are in accord with the general rule that
the holder of an uncertified or unaccepted check can, in
the absence of statute, maintain no action thereon against
the bank on which it is drawn even though the bank has
funds of the drawer out of which it could pay the check.
The principle is based upon the theory that there is no
privity on contract between the holder of the check and
the drawee bank. See case note to L. R. A. 1916 C. at
166. The principal case cited to support the majority
rule just referred to is *First National Bank* v. *Whitman,*
94 U. S. 343, in which the court held that the payee of a
check before it is accepted by the drawee cannot maintain
an action upon it against the latter as there is no privity
of contract between them. In that case the court held
that payment to a stranger upon an unauthorized in-
dorsement does not operate as an acceptance of the check,
so as to authorize an action by the real owner to recover
its amount as upon an accepted check. We do not think

that our holding in our own cases above cited or the holding in the Whitman case is in conflict with our holding in the present case. It is apparent from an examination of the case note just referred to that the courts of last resort from several of the States from which we have cited cases to support our holding in the present case have also held in accordance with the rule in this State that the payee of an unaccepted check cannot maintain an action against the bank upon which it is drawn upon refusal of payment even though the drawer has funds in the bank. As we have already seen, Slates, the agent of the plaintiff, had no right to indorse the checks in the plaintiff's name and the plaintiff's right to the checks remained precisely as it was before Slates undertook to indorse them for him. The checks therefore when received by the defendants were the property of the plaintiff and in that case he may, as we have seen, ratify the action of the banks in receiving the checks and collecting their proceeds without ratifying the unauthorized act of his agent in indorsing the checks in the name of the principal. This view is not opposed to the reasoning of the court in *Mills* v. *Hurley,* 129 Ark. 350. In that case the payee sued the drawer on a check which had been rightfully delivered to an agent of the payee in payment of the debt of the drawer, but which had been indorsed by the agent without authority and collected. The court held that the drawer had discharged his full duty in delivering the check to an agent of the drawee authorized to receive it in payment of his debt and that he could not be held responsible for the wrongful act of the agent of the drawee in indorsing the check in the latter's name without authority and collecting it. The authorities on this question are divided; but there seems to be nothing in the reasoning of the court in *Mills* v. *Hurley, supra,* that conflicts with the views we have herein expressed. Therefore the plaintiff's right of recovery upon the checks is complete and the court erred in holding to the contrary.

This is an application of that well settled maxim that a subsequent ratification has a retrospective effect and is equivalent to a prior command.

It is also contended that the justice of the peace in the one case and the municipal court in the other were without jurisdiction because the checks in the aggregate in each case amounted to more than $300. There is no merit in this contention. Each check was for less than $300, and the transaction in regard to each was had on different days. They constituted separate transactions and had no relation to each other. It is well settled in this State, that where there are separate causes of action upon distinct contracts, each for a sum within the jurisdiction of a justice of the peace, they may be joined in one section, even though the aggregate amount exceeds the jurisdictional amount. *American Soda Fountain Co.* v. *Battle,* 85 Ark. 213; *Modern Laundry* v. *Dilley,* 111 Ark. 350, and *Fort Smith Paper Co.* v. *Templeton,* 113 Ark. 490.

For the error indicated in the opinion, the judgment in each case must be reversed and the cause remanded for a new trial.