STATE OF NEBRASKA V. AMERICAN STATE BANK.
BENJAMIN W. SPRINGER, APPELLEE, v. A. F. ACKERMAN, RECEIVER, APPELLANT.

FILED MARCH 28, 1922.    No. 21981.

1.  Banks and Banking: MISAPPROPRIATION OF FUNDS: IMPUTED KNOWLEDGE. Where the managing officer of a banking corporation acts as its sole representative in receiving and accepting for deposit in the bank an unindorsed check under an arrangement with the payee, a depositor, to credit it to his account, but, instead of doing so, makes the deposit and checks out the fund in the name of another corporation conducting its business in the bank and managed there by such officer, the latter's knowledge of the payee's right to credit for the check on the books of the bank may be imputed to the bank.

2.  ———: ———: DEPOSIT. Where a bank knowingly receives and accepts an unindorsed check, payable to a depositor, under an ar-

State v. American State Bank.

rangement with him to credit it to his account, but, instead of doing so, gives another credit for the fund on the books of the bank and permits the latter to check it out, the payee may be decreed to be a depositor entitled to credit for the amount of the check, though the bank has passed into the hands of a receiver.

3. ——: ——: CUSTOM. Departure by a bank from a plain, unambiguous arrangement between it and a depositor, whereby an unindorsed check payable to the latter shall be credited to his account on the books of the bank, *held* not justified by a custom at variance with the terms of the agreement.

4. ——: ——: FALSE ENTRIES. False entries on the books of a bank, whereby one depositor is credited with the funds of another, do not change the relation of banker and depositor in regard to that particular item or relieve the bank from liability for a proper disbursement of the fund, if the bank is chargeable with knowledge of the facts.

APPEAL from the district court for Hamilton county: EDWARD E. GOOD, JUDGE. *Affirmed.*

*Charles E. Matson,* for appellant.

*Hainer, Craft & Edgerton, contra.*

Heard before MORRISSEY, C. J., ALDRICH and ROSE, JJ., HOBART and PAINE, District Judges.

ROSE, J.

This is a controversy between A. F. Ackerman, receiver of the American State Bank of Aurora, Nebraska, an insolvent corporation, and Benjamin W. Springer, claimant, as a depositor.

In a proceeding by the state of Nebraska to wind up the affairs of the bank, Springer filed a claim for a balance of $42,375.30. The deposit in controversy was never entered on the books of the bank as a credit in favor of Springer and he pleaded fraud in that respect. The receiver objected to the allowance of the claim on the ground that Springer entrusted his fund to his own agent, the Wentz Company, a corporation that deposited it in its own name and checked it out before knowledge of Springer's equities reached the bank. In a cross-petition

the receiver also demanded judgment against Springer for $2,500 on a promissory note which he had executed and delivered to the bank. Upon a full hearing the district court found the issues in favor of Springer and allowed his claim as a depositor for a balance of $39,737.80, after deducting his debts, including the amount due on his note. The receiver has appealed.

Questions of agency and imputed knowledge are presented by the appeal and require a more detailed statement of the case.

Benjamin W. Springer, claimant, owned a farm on the edge of Aurora. Acting for himself without an agent he sold it to August Matson for $54,000, June 14, 1919. The purchaser paid $3,000 down and gave his note for $2,000. The balance due Springer February 28, 1920, when the title to the farm was transferred to Matson, was $48,155, including interest. For that sum Matson then gave his check, payable to Springer. The proceeds of the check were received by the bank and paid out on checks of the Wentz Company. The claim in controversy is based largely on Springer's right to credit as a depositor on the books of the bank for the amount of this check.

The American State Bank commenced business as a commercial enterprise March 8, 1918. An officer of the state took charge of it in an insolvent condition March 17, 1920, and was succeeded by Ackerman, receiver, May 14, 1920. The bank has not since been open for the transaction of a general banking business. From May 18, 1918, until the closing of the bank Springer transacted business with it as a depositor.

The Wentz Company was a corporation dealing in real estate, farm loans, mortgages and insurance. With it Springer had transacted business at intervals for a number of years.

Charles W. Wentz was vice-president and managing officer of the bank. It had a president in name only. It had a cashier, but he recognized Wentz as the superior officer

State v. American State Bank.

and deferred to him. In some capacity Wentz had exclusive control and management of the Wentz Company. The business of both corporations was generally transacted in the same building with Wentz the controlling spirit in both enterprises. The transactions of the corporations were more or less intermingled. The bookkeepers in the bank kept the books for the Wentz Company. The two corporations occupied the same room and used the same counter, the same vault and the same safe. Each paid half the office rent. The officers of the Wentz Company were officers of the bank. A stamp used by Wentz in indorsing checks for the bank was used by him to indorse papers for the Wentz Company. There was no public sign to identify the corporate hand that manipulated the business devices used by Wentz in disbursing the funds of bank depositors.

The contract for the sale of the farm was drawn by Wentz in his bank and was executed there, he being a witness. On the books of the bank and on the pass-book of Springer the cash payment of $3,000 was credited to his account as a depositor. Within a short time Wentz drew a warranty deed in the bank. Later it was executed by Springer and left there in escrow for Matson upon payment of the balance of the purchase price.

Springer and Matson, vendor and purchaser, met in the bank February 28, 1920, and agreed on the balance of the purchase price including interest—$48,155. Matson said the cashier of the First National Bank of Aurora would attend to the payment. Springer told Wentz to take the deed over to that bank, to bring back the check and to credit it to the account of Springer in the American State Bank. To this Wentz assented. The Wentz Company was not mentioned. Afterward Wentz went a block or more to the First National Bank, delivered the deed, and returned to his own bank with a check in the following form:

"Aurora, Nebr., Febr. 28th, 1920.
"First National Bank.
"Pay to Ben. W. Springer or order $48,155.00 forty-

eight thousand one hundred fifty-five & no/100 dollars.

"August Matson."

On the back Wentz indorsed the check thus:

"Credited to account of Benj. W. Springer, 2/28/20."

The name "Benj. W. Springer" is in the handwriting of Wentz, who entered upon a deposit slip of his bank a credit in favor of the Wentz Company for $48,155. The check was never indorsed by Springer, the payee, who, as a depositor, had an account in his own name in the American State Bank. Under such circumstances it was a custom of banks to deposit the check to the credit of the payee. The check was presented to the bank by its managing officer Wentz, who knew all about the conditions on which it was issued and procured. The bank, acting solely through its managing officer Wentz, performed the corporate act of receiving and accepting the check for deposit. The funds of Springer were credited by the bank to the account of the Wentz Company. The bank received the proceeds of the check and paid them out on the checks of the Wentz Company. The account of the latter was overdrawn when the bank was closed and its books did not show a credit in favor of Springer for the amount of his check. Springer was not guilty of any wrongful, fraudulent or deceitful act in connection with these transactions.

The facts and the conclusions stated are proper deductions from the evidence.

For the purpose of escaping the liability of the bank for crediting the Wentz Company with the check of Springer and disbursing his money on its checks, the receiver argues that Wentz and the Wentz Company were the agents of Springer; that it was no part of the duties of Wentz as an officer of the bank to leave his place of business to collect and deposit funds for Springer; that in these respects Wentz did not act for or in the interests of the bank; that Wentz, as manager of the Wentz Company, received the funds as the agent of Springer for the purpose of paying the latter's debts and making investments in securities for

him under his own instructions; that Springer had trans-
acted business with the Wentz Company and knew it was
a custom of the latter to deposit and check out in its own
name funds of its clients; that in these respects Wentz
acted for Springer and the Wentz Company, and not for
the bank which received and paid out the funds in good
faith without actual or imputed knowledge of Springer's
equities.   These propositions are argued at considerable
length and precedents are cited to support the principles
of law invoked to defeat Springer's claim.

The receiver's view of the case and of the law applicable
to the facts must be rejected.   The bank was a place to
deposit money subject to the check of the depositor.   The
Wentz Company was not a corporation of that kind.   It
was not engaged in commercial banking in its own name.
The bank and Springer, in their respective names, entered
into the relation of banker and depositor before Wentz
procured the check.   In transactions relating to deposits
Springer, in dealing with Wentz, thought he was dealing
with the bank.   The situation outlined justified that view.
The purchase money for the farm belonged to Springer
and he had a right to say what should be done with it.
He told Wentz to deliver the deed, to get the check and to
credit it to Springer's account, and afterward left for Cali-
fornia.   The procuring of deposits is a legitimate matter
of interest and profit to a commercial bank.   Wentz, as
the managing officer of the American State Bank, had
authority to receive and accept the check for deposit after
he returned with it.   In doing so he was for all practical
purposes the bank itself.   In performing this corporate,
banking function he was the sole representative of the
bank.   Springer could not appoint an officer or select an
agent to represent the bank in receiving and accepting his
check for deposit therein.   He was not a party to any con-
spiracy to defraud or cheat the bank, nor was he guilty of
any other wrongful act in connection with his banking
transactions.   It would be a shocking test of business recti-

tude to recognize the agency of Wentz as the sole representative of the bank for the purpose of receiving and accepting the check for deposit and at the same time renounce his agency for the purpose of justifying a wrongful disbursement of the proceeds. Wentz knew the terms on which the check was procured from Springer and in receiving and accepting it for the bank to be deposited therein his knowledge was imputable to the bank.

The receiver, insists, however, that Springer told Wentz to invest a portion of the fund in securities and keep the balance on deposit; that this investment was the business of the Wentz Company, and that Springer knew of its custom to deposit in its own name and check out funds of its clients in making investments for them. It is sufficient to answer that the investment could have been made without the depositing of Springer's money to the credit of the Wentz Company; that the transactions relating to the receiving and the accepting of the check for deposit were between the bank, chargeable with knowledge of the facts, and Springer; that the definite arrangement between the bank and Springer that the deposit should be made in his name and the receiving and the accepting of the check by the bank on that condition amounted to an agreement not controlled by any custom at variance with its terms.

Springer did nothing to forfeit his rights or to estop himself from asserting them.

It is clearly established by the evidence that Wentz, acting for the bank as its sole representative, received and accepted for deposit the check for $48,155, payable to Springer, knowing the latter, as a depositor, was entitled to credit for that sum on the books of the bank. The knowledge of Wentz in relation to these transactions, under the circumstances, was the knowledge of the bank. The relation of the bank to Springer and its liability for a proper disbursement of his money were not changed by the false entries on the books of the bank. The wrongs for which the bank is answerable to Springer consist in the

false credit in favor of the Wentz Company and in the disbursement on its checks.

The trial court made no mistake in its findings of fact or in its conclusions of law.

AFFIRMED.