STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, APPELLEE, V. FARMERS & MERCHANTS BANK OF KENNARD, APPELLEE: REED O'HANLON, ADMINISTRATOR, APPELLANT.

FILED MAY 25, 1929. No. 26700.

*Gaines, McGilton, Van Orsdel & Gaines* and *O'Hanlon & O'Hanlon,* for appellant.

*Crossman, Munger & Barton, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and RAPER and REDICK, District Judges.

DAY, J.

The administrator with the will annexed of the estate of Ole P. Larsen brings this action for an allowance of his claim against the guaranty fund of the state of Nebraska. The present executor was appointed in September, 1924, upon the removal of one Kronberg, who had been appointed in July, 1923. Kronberg was the president and actual manager of the Farmers & Merchants Bank at Kennard, Nebraska, during the time he acted as executor of the estate of Larsen. On April 24, 1924, as executor, he deposited in his bank $8,000 which he had collected of the assets of said estate. At the time Kronberg was appointed executor, there were in the safety deposit box of the deceased in the bank three certificates of deposit issued by his bank; one for $5,000, one for $3,000, and one for $2,000, which items with the $8,000 deposit heretofore mentioned make up the total of the claim of $18,000.

Prior to the time Kronberg became executor of the Larsen estate, he had made some improvident loans of the bank's money, which loans he had been required to take out

of the bank by the bank examiners. In order to make the bank appear solvent and its books balance, he had marked the certificates of deposit as paid, and placed them with paid certificates of the bank; and had also charged the checking account with $8,000. Neither the certificates of deposit nor the $8,000 in the checking account were ever paid by the bank. The trial court found that the executor had withdrawn the deposits from the bank, and the relation of depositor had ceased, consequently the claim was not allowable against the guaranty fund of the state of Nebraska.

As we view this case, the only question presented is whether the manipulations of the records of the bank by Kronberg were of such a nature as to terminate the deposit of the estate in said bank. In the consideration of this case it is difficult not to confuse in our mind the acts of Kronberg as president and manager of the bank and those of Kronberg as executor of the estate of Ole P. Larsen. It is necessary to a proper determination of this case that we keep these two relationships clearly and distinctly separated. It is only difficult because the two official positions were held by the same man. We think, if we remember that this was the money of the estate, held in trust and deposited in the bank by Kronberg as executor, it will help us to avoid confusion. The appellee argues that, had Kronberg as executor brought this action instead of his successor in office, then there would be no doubt but that he as executor could not secure the allowance of this claim against the guaranty fund. If it could be conceived that he had been continued as executor by the probate court, and it was apparent that the estate was in fact a depositor of said bank, that said relationship had not been terminated, then a judgment might have been entered allowing the claim as a deposit, for the benefit of the estate, in the name of Kronberg, as well as in the name of his successor as executor.

If Kronberg as executor withdrew the money from the bank, then the relationship of banker and depositor was terminated and the guaranty fund cannot be charged with this claim. Upon this question the trial court found: "That the

bank president was at the time of the application of these funds to the credit of other accounts in said bank the sole acting executor of said estate with the legal title and power of disposition. Through and by his action, his relationship as a depositor of said bank ceased," The evidence in the case discloses that some loans had been made by the bank to individuals for speculations, which are not usually considered by bankers generally as sound investments. The bank had taken the notes of these individuals to cover these loans. Kronberg had acted for the bank in these transactions and seems to have been personally interested in them. This paper was not considered good and the bank examiner insisted that some $20,000 of these notes be taken from the bank. This made it necessary to replace it with money or security to fill the hole in the assets of the bank caused by the loan of the amount of money represented by the worthless notes. This was accomplished by Kronberg by marking the certificates of deposit (amounting to $10,000) "paid" and placing a memorandum in the bank indicating the withdrawal of the $8,000 deposit. However, no money was withdrawn from the bank, but $13,000 was applied to a shortage in the Storz checking account and $5,000 was used to pay a certificate of deposit. The effect of this transaction, entirely a bookkeeping one, in so far as the estate was concerned, was to enhance the assets of the bank by $18,000. It was $18,000 to which the bank had no right or even claim of title. It is urged by appellee that it was of no benefit to the bank to pay the $13,000 on the Storz account, since the bank had contracted to pay an excessive rate of interest on this deposit. To use the language of *State v. American Exchange Bank*, 112 Neb. 834: "A contract for 6 per cent. is not illegal in the sense of being unenforceable as against the bank. It is simply one not within the guaranty statutes. A depositor may take his choice, receive 5 per cent. and be within the statutes as a depositor, or 6 per cent. and be without, as one holding a loan." So far as the bank was concerned, when it used $13,000 of this money to pay the Storz account, it increased the assets of the bank by that

amount. True, it did not increase the net assets of the bank transferable to the guaranty fund commission, because the commission might have successfully resisted the payment of the deposit. But when the bank ceased to be a going concern and the receiver took charge this was a closed transaction which concluded the bank.

Now the remainder of $5,000 of this account was used to pay a bogus certificate of deposit. Without going into the details of this transaction, suffice it to say that, in so far as the bank is concerned, nothing in the record discloses that it was not the valid obligation of the bank at the time. It follows then that this transaction inured to the benefit of the bank in that it removed from the books of the bank its liability to this depositor, without the payment of any money.

In *State v. American State Bank,* 108 Neb. 98, it is held: "False entries on the books of a bank, whereby one depositor is credited with the funds of another, do not change the relation of banker and depositor in regard to that particular item or relieve the bank from liability for a proper disbursement of the fund, if the bank is chargeable with knowledge of the facts."

Where money is deposited in a bank by an executor of an estate, who is also president and manager of the bank, false entries which indicate that the money has been withdrawn from the bank, when in fact it was not so withdrawn, but was diverted to other accounts for the benefit of the bank, do not terminate the relationship of depositor and banker. The deposit in this case was diverted for the benefit of the bank, and the deposit was not terminated by the entries on the books of the bank, which were not in accord with the actual facts. The evidence forces the conclusion that this was a valuable business transaction for the bank.

The appellee relies upon the holding in the case of *State v. Farmers & Merchants Bank of Walton,* 112 Neb. 840, wherein it is stated: "Where money is deposited in a bank to the credit of an administrator of an estate, the bank is charged with notice of the trust character of the fund, but is not required to see that the same is properly applied or

accounted for, in the absence of notice, or knowledge of facts putting it upon inquiry, that the money is being misapplied." This court has held in several cases that the knowledge of the managing officer of a bank is imputable to the bank, as to the rights of the beneficiary of a trust. *State v. American State Bank,* 108 Neb. 98; *State v. American State Bank,* 108 Neb. 129. In *State v. American State Bank,* 108 Neb. 111, it is held: "Where a trustee deposits in a bank, in the name of a corporation of which he is manager, trust funds belonging to others, the bank at the time having knowledge of the facts, any balance remaining on deposit, when the bank is closed on account of insolvency, inures to the benefit of the beneficiaries of the trust and may be protected in the hands of the receiver as a deposit."

It is not necessary to impute the knowledge of Kronberg as president and manager of said bank to it. The bank had actual knowledge of this whole transaction. The books of the bank disclose the whole transaction. The bank paid out nothing to cancel this deposit and the deposit was not withdrawn but remained a deposit of said bank. In *State v. Farmers & Merchants Bank of Walton, supra,* the writer of the opinion drew the distinction between that case and the case at bar, when he stated: "Where the fund is withdrawn upon checks of the trustee, signed in his official character, the responsibility of the bank with regard thereto is ended." And again: "If he had attempted to apply the fund in payment of an overdraft at the bank or in any other way for the bank's benefit, the bank would be charged."

It is vigorously contended by the appellee that the act of marking the certificates of deposits as paid; that the act of placing an order for the payment of the checking account; and that the bookkeeping transactions incidental thereto, were the acts of Kronberg as executor. All of these things were done within the privacy and seclusion of the cage of the bank. When Kronberg, president and manager of the bank, falsified the records to indicate payment, the act was done by the bank and for the benefit of the bank. It was not done by Kronberg as executor, for as such he did not

have access to the books of the bank. When Kronberg, executor, delivered to Kronberg, banker, the certificates of deposit, then Kronberg as banker and not as executor canceled them with full knowledge of the trust character of the deposit, without the payment of any bank funds. Likewise he falsified the records of the bank to show a withdrawal of the checking account. Had the funds been actually withdrawn, it would have presented a different problem, but such was not the case. The things Kronberg did relative to this deposit, he did in the performance of banking functions.

Having reached the conclusion that there was no withdrawal of the funds of the estate from the bank by the executor and that the false entries on the books indicating a withdrawal were the acts of the bank made with a full knowledge of the trust character of the funds, we find that at the time the bank ceased to be a going concern and was placed in the hands of the state the executor of the estate of Ole P. Larsen had a deposit of $18,000 therein which is a valid claim against the guaranty fund of the state of Nebraska. The trial court should enter judgment according to the views herein expressed.

REVERSED.