STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. CITIZENS STATE BANK OF WAHOO: MARTIN ERICKSON, INTERVENER, ET AL., APPELLEES: SAUNDERS COUNTY NATIONAL FARM LOAN ASSOCIATION, APPELLANT.

FILED MAY 12, 1933. No. 28438.

*Sanden, Anderson & Gradwohl,* for appellant.

*F. C. Radke, J. F. Berggren, Barlow Nye, Good, Good & Kirkpatrick* and *E. S. Schiefelbein, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day and Paine, JJ.

Eberly, J.

Prior to May 10, 1930, the Citizens State Bank of Wahoo, Nebraska, was conducting a general commercial banking business in that city. On the day mentioned, in a proper proceeding instituted for that purpose, an adjudication of the insolvency of that institution was made

and a receiver therefor appointed, with direction to liquidate this bank as provided by law.

On June 4, 1931, in this proceeding, a petition of intervention was filed by Martin Erickson against the appointed receiver and the Saunders County National Farm Loan Association. So far as the issues here presented for consideration are concerned, that petition embraced the following allegations:

"That on or prior to the 17th day of August, 1929, this intervener had on deposit in an open checking account belonging to him in said Citizens State Bank a sum of money in excess of $2,500; * * * that on the said 17th day of August, 1929, the said bank wilfully, wrongfully and unlawfully caused a check to be drawn upon said account in the sum of $2,500 and caused said check to be signed with the name of this intervener and deposited the said check in the said bank to the credit of the respondent, the Saunders County National Farm Loan Association; that said check was drawn wholly without consideration and without authority from this intervener and without the knowledge of this intervener; that the said check was drawn and deposited as hereinbefore alleged for the purpose of transferring the said sum of $2,500 from the account of this intervener and giving the same to the respondent, the Saunders County National Farm Loan Association. * * *

"That the active managing officer of the respondent, Saunders County National Farm Loan Association, at all times herein mentioned was Emil Benson, who was at such times secretary-treasurer of said Saunders County National Farm Loan Association, and such officer was in exclusive control of the affairs, property and business of said Saunders County National Farm Loan Association. That the said Emil Benson was also at all of said times cashier of the said Citizens State Bank, and that the transfer hereinbefore described was made fraudulently and intentionally by the said Benson as agent and managing officer of the said Saunders County National Farm

Loan Association and as its active managing officer and for its use and benefit.

"That the said Saunders County National Farm Loan Association used for its use and benefit all of the said sum of money so transferred to it from the property of this intervener and has accepted the benefit of all of said transaction with knowledge of the source of the money as hereinbefore described and by reason thereof has ratified and confirmed the said transaction and is now estopped to question or deny that the said transaction was made by it and for its use and benefit."

The defendant, Saunders County National Farm Loan Association (hereinafter called the Loan Association), as its defense, "denies each and every allegation in said petition in intervention contained."

Prior to the introduction of any evidence, the Loan Association presented a general demurrer *ore tenus,* which was overruled, and upon consideration of the evidence subsequently introduced, the district court awarded judgment to intervener as prayed against the Loan Association, and also against the Citizens State Bank of Wahoo. From the order overruling its motion for a new trial, the Loan Association separately appeals.

The intervener contends that, "Where a defendant holds the proceeds of the collection of a negotiable instrument based upon a forged or unauthorized signature, the true owner of the money may recover the amount from the person receiving such proceeds." He cites, as supporting his position, the following cases: *Allen v. Mendelsohn & Son,* 207 Ala. 527; *Schaap v. First Nat. Bank,* 137 Ark. 251; *George v. Security Trust & Savings Bank,* 91 Cal. App. 708; *United States Portland Cement Co. v. United States Nat. Bank,* 61 Colo. 334; *Merchants Bank v. National Capital Press,* 53 App. D. C. 59, 288 Fed. 265; *Hamlin's Wizard Oil Co. v. United States Express Co.,* 265 Ill. 156; *Indiana Nat. Bank v. Holtsclaw,* 98 Ind. 85; *Hope Vacuum Cleaner Co. v. Commercial Nat. Bank,* 101 Kan. 726; *Meyer v. Rosenheim & Co.,* 115 Ky. 409; *A.*

*Blum Jr.'s Sons v. Whipple,* 194 Mass. 253; *National Union Bank v. Miller Rubber Co.,* 148 Md. 449; *Thomas v. First Nat. Bank,* 101 Miss. 500; *Good Roads Machinery Co. v. Broadway Bank,* 267 S. W. (Mo. App.) 40; *Robinson v. Chemical Nat. Bank,* 86 N. Y. 404; *Crisp v. State Bank of Rolla,* 32 N. Dak. 263; *Shaffer v. McKee,* 19 Ohio St. 526; *Bell-Wayland Co. v. Bank of Sugden,* 95 Okla. 67; *Charleston Paint Co. v. Exchange Banking & Trust Co.,* 129 S. Car. 290; *Farmer v. Bank,* 100 Tenn. 187; *Labor Bank & Trust Co. v. Adams,* 23 S. W. (2d) (Tex. Civ. App.) 814; *California Stucco Co. v. Marine Nat. Bank,* 148 Wash. 341.

But these cases involve valid negotiable instruments on which indorsements only were forged. As applied in banking transactions, the rule they sustain is: "If a negotiable instrument having a forged indorsement comes to the hands of a bank and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection." 1 Morse, Banks & Banking (5th ed.) sec. 248, p. 491.

"The cases are based upon the theory of ratification by the payee or owner of the check of its collection from the drawee, and that the collecting bank can then be held as for moneys had and received, and that the payment by the drawee bank to the collecting bank with the forged or unauthorized indorsement thereon is evidence that the check was accepted and paid by the drawee bank, which acts the payee ratifies. In other words, the true owner of a check, with a forged unauthorized indorsement may ratify the act of a bank, in receiving it, in that condition; and collecting the proceeds or paying them out without authority, and yet not ratify the forged or unauthorized indorsement. In such cases the bank cannot avoid liability by showing that its conduct was governed by good faith, and the payee is entitled to recover unless he has been guilty of fraud or negligence in the matter." *Schaap v. First Nat. Bank,* 137 Ark. 251, 259.

But it would appear that these principles, unquestionably sound as abstract propositions, are inapplicable to the facts here involved. The instrument made use of in the instant case is a forged check, not a forged indorsement·on a valid check. By its terms it was drawn on the Citizens State Bank of Wahoo, and payable to "Note or order." It is not indorsed. The payee named as "Note or order" is a fiction, a nonexisting person, a fact which all persons concerned in its execution or use must have known. From the evidence in the record its sole use was as a "debit slip"·by the officers and servants of the bank. If, however, it is to be credited with the qualities of negotiable paper, it must be deemed a forged check payable to bearer. Comp. St. 1929, sec. 62-109. Plainly, such an instrument was not considered in any of the authorities cited by intervener, nor is it subject to the rule announced therein.

In the discussion of the determinative questions presented in this record, it is quite apparent that we have mirrored in this testimony a part of the history of a losing fight by the officers of the Citizens State Bank of Wahoo to avoid the effects of impending, if not the then present, insolvency of that institution. These developing conditions culminated in the appointment of a receiver a very few months later. We are justified in considering the evidence in the light of these facts.

The petition in this case, as quoted, in effect first alleges that the actual unlawful transfer of the $2,500 in controversy was made by the bank itself. Later it avers it was made by the Loan Association. Admittedly there was but one transfer. Both statements cannot be true. It must be manifest that, if the bank is the responsible actor that made or caused to be made the unlawful transfer of credit, the Loan Association could not have been. Therefore, if one statement is true, the other must necessarily be untrue. The rule appears to be: "Inconsistent, repugnant, or contradictory averments of matters of substance neutralize each other." 49 C. J. 99.

Notwithstanding this situation presented by the pleading, we are inclined to the view that, under the provisions of our Civil Code, aided by a liberal construction, even eliminating the contradictory allegations noticed, circumstances and facts are alleged in the petition, from which, if true, it appears that in justice and fairness the money ought to be returned to intervener. In short, while the proceedings are equitable in form, still the pleading may be sustained as setting forth a claim for relief in the nature of an action for money had and received. *Thiele v. Carey*, 85 Neb. 454. To sustain his recovery on this basis, intervener must establish that the Loan Association has money which in equity and good conscience belongs to him. 41 C. J. 33, 46. See, also, *Shotwell v. Sioux Falls Savings Bank*, 34 S. Dak. 109.

There seems to be no substantial dispute in the evidence. The intervener and the Loan Association were each customers of the Citizens State Bank of Wahoo. Both carried checking accounts with that institution. On June 24, 1929, the Loan Association drew its check upon the Citizens State Bank of Wahoo for the sum of $4,725 payable to the order of the Lincoln Trust Company. This check was sent to the Lincoln Trust Company, and, in due course of exchange, was on August 5, 1929, presented to the drawee bank by the First National Bank of Wahoo, and on that day honored and paid. The record shows that on the day of its presentment and payment there was a credit balance in the checking account of the Loan Association of but $1,855.50. Obviously, the instant payment was effected, the Loan Association had an overdraft in the bank of $2,869.50. The Loan Association then owed the bank that sum; the bank was not then indebted to it in the sum of $1,855.50. True, Benson, the cashier and managing officer of the bank, did not enter up the transaction at once as he was required to do. Comp. St. 1929, sec. 8-102. He also failed to affix the usual "paid stamp." The reason, in absence of explanation, is obvious, for, by not entering the transaction in the books

and by placing the "paid check" (now a worthless instrument save as a voucher) on the cash tray as a cash item, he was enabled to falsely and fraudulently conceal the real situation of his bank from day to day by thus effectively representing to all parties in interest that the cash till had $4,725 more in it than it really contained. The Loan Association had no knowledge of this, and neither could its interest be possibly promoted thereby. The only party in interest was the bank, and in its behalf the acts of its cashier must be deemed for all purposes to have been performed. But in this proceeding, which is equitable in form, the facts just recited invoke the application of the well-established maxim, in equity, that "Equity regards as done that which ought to be done." It would follow that in this case, in view of the obligation resting upon the officers of this bank to keep accurate and convenient records of its transactions and accounts, the fact of the payment of this check of $4,725 should have been entered upon its books on the day it was made. Therefore all parties whose interests are in any manner affected by this default will be deemed entitled to the same rights as if that duty had been actually performed. 21 C. J. 200.

It follows that, for the purposes of this case, the checking account of the Loan Association must be deemed overdrawn in the sum of $2,869.50 on and after August 5, 1929. Following this transaction the evidence discloses that on August 17, 1929, E. B. Benson, the cashier, employing the usual blank counter check form of the Citizens State Bank, wrote a check, directed to this bank as drawee, for the sum of $2,500, in which the payee is designated as "Note or order," and which he signed as "Martin Erickson, E. B.," and credited it as the deposit of a check of $2,500 to the account of the Loan Association. No indorsement appears on this check. On the same day the "paid stamp" is affixed to the check of $4,725, which, since August 5, 1929, has been carried as a "cash item," and that amount is entered as of the 17th day of August,

1929, as a charge on the Loan Association's account. So also, on August 17, 1929, the account of Martin Erickson is charged with a $2,500 check. Nothing appears to have been actually withdrawn by the Loan Association from the Citizens State Bank since August 5, 1929. The last amounts paid out on their behalf was when the check of $4,725 was honored and paid on that date. So too it is conceded that the deposit of $2,500 in the account on August 17 was wholly unauthorized by Martin Erickson and the so-called check was tantamount to a forgery, by Benson, the cashier of the bank. We are committed to the view: "Where the managing officer of a banking corporation deposits in his bank, in the name of another corporation of which he is also manager, money and securities belonging to others, for whom he is agent and trustee, and receives and accepts the deposit for the bank as its sole directing authority, his knowledge of the rights of the beneficiaries of the trust may be imputed to the bank." *State v. American State Bank,* 108 Neb. 111.

The following is also the accepted doctrine of this court: "False entries on the books of a bank, whereby one depositor is credited with the funds of another, do not change the relation of banker and depositor in regard to that particular item or relieve the bank from liability for a proper disbursement of the fund, if the bank is chargeable with knowledge of the facts." *State v. American State Bank,* 108 Neb. 98.

See, also, *State v. Farmers & Merchants Bank of Kennard,* 118 Neb. 495; *Blakey v. Brinson,* 286 U. S. 254, 76 L. Ed. 1089.

So it must be conceded that, where money is deposited as a general deposit, it ceases to be the money of the depositor and becomes the money of the bank, and the depositor becomes a creditor of the bank to the extent of such deposit. *Harrison State Bank v. First Nat. Bank,* 116 Neb. 456; *State v. Farmers & Merchants Bank,* 114 Neb. 378; *Citizens State Bank v. Worden,* 95 Neb. 53.

Not only does it thus affirmatively appear that the Loan

Association has never received any part of this $2,500, exclusively book-keeping transaction, but it also affirmatively appears that, in the settlement of all controverted matters between the Loan Association and the bank, the Loan Association received no credit whatever for the $2,500 thus deposited, and is not claiming to own it in the present litigation.

It necessarily follows that the action by intervener against the Loan Association cannot be sustained for moneys that the latter never has had; that the attempted deposit in the account of the Loan Association by Benson, the cashier, was wholly invalid and in no way impairs the rights of Erickson against the Citizens State Bank. The district court therefore erred in the rendition of the judgment against the Loan Association appealed from, and the same, in so far as affecting that association, is reversed and the cause is dismissed.

REVERSED AND DISMISSED.