SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–14–619

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** February 4, 2015 |
| LOUIS BUTLER | | APPEAL FROM THE PULASKI |
| | APPELLANT | COUNTY CIRCUIT COURT, FIFTH DIVISION |
| | | [NO. 60CV-08-13331] |
| V. | | |
| | | HONORABLE WENDELL GRIFFEN, JUDGE |
| LOVER FINLEY | | |
| | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Louis Butler appeals the February 21, 2014 order of the Pulaski County Circuit Court awarding appellee Lover Finley $35,286.39 in actual damages and $100,000 in punitive damages. He argues that there was insufficient evidence that he committed the tort of conversion. We affirm.

Dearel and Phyllis Wilbert, husband and wife, owned a home at 4127 Arapaho Trail Road, Little Rock, Arkansas, a rental property for them, upon which they had a mortgage. The Wilberts filed for bankruptcy and were contacted by appellant regarding the purchase of the property. Appellant found a buyer for the home, and the Wilberts quitclaimed the property to Vicki Haynes. Haynes then quitclaimed her interest in the property to appellee, and appellee and her husband, Lurone Coakley, began making payments to Wells Fargo

Home Mortgage, which held the mortgage on the property. The Wilberts never notified Wells Fargo that they were no longer making the mortgage payments.

Appellee purchased an insurance policy from Farmers Insurance Company on the house when she and her husband moved into it. The policy was for approximately $160,000. Subsequently, the house burned, and Farmers sent appellee a check for $81,680.30 made payable to her and Wells Fargo. Appellee endorsed the check and sent it to Wells Fargo, which paid off the mortgage balance and returned the difference, $35,286.39, to the Wilberts, whose names were listed as payees on the check.

Appellee attempted to determine from Wells Fargo why her name was not on the check and contacted appellant, who arranged for appellee to meet with the Wilberts. The parties met at a restaurant, and the Wilberts refused to endorse the check in favor of appellee.

Sometime after the first check had been sent, Wells Fargo sent a second check, also made payable to the Wilberts, directly to appellant's office. Appellant telephoned Mrs. Wilbert and asked her to sign the check; she again refused and hung up on him. The Wilberts never endorsed any check and never authorized anyone to endorse the check. Appellant's sister then endorsed the check and deposited the check into appellant's personal bank account.

Appellee and her husband filed a lawsuit against Wells Fargo, the Wilberts, the City of Little Rock, and appellant. All defendants except appellant were dismissed from the case. Those dismissals are not appealed. A jury found appellant liable to appellee for conversion and awarded $35,286.39 actual damages and $100,000 punitive damages, which was reflected in

SLIP OPINION

the February 21, 2014 order. Appellant filed a motion for a new trial on March 6, 2014, which was deemed denied because the circuit court took no action on it. He then filed a notice of appeal on May 2, 2014.

On appeal of a denial of a motion for directed verdict, it is not an appellate court's place to try issues of fact; the appellate court simply reviews the record for substantial evidence to support the jury's verdict. *Ark. Realtors Ass'n v. Real Forms, LLC*, 2014 Ark. 385, 442 S.W.3d 845. The Arkansas Supreme Court has held that "[a] motion for directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions." *Byme, Inc. v. Ivy*, 367 Ark. 451, 456, 241 S.W.3d 229, 234 (2006) (internal citations omitted). The appellate court will defer to the jury's resolution of the issue unless there is "no reasonable probability" for it. *Unum Life Ins. Co. of Am. v. Edwards*, 362 Ark. 624, 627, 210 S.W.3d 84, 87 (2005).

Arkansas Code Annotated section 4-3-420 codifies the UCC definition of conversion of a negotiable instrument as follows:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by
>
> > (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiffs interest in the instrument.

(c) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

Ark. Code Ann. § 4–3–420 (a)-(c) (Repl. 2001).

Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *Gurlen v. Henry Mgmt., Inc.*, 2010 Ark. App. 855. It is committed when a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights. *Id*; *see also Hatchell v. Wren*, 363 Ark. 107, 211 S.W.3d 516 (2005). The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the owner's rights. *Gurlen*, *supra*. The property interest may be shown by a possession or present right to possession when the defendant cannot show a better right, since possession carries with it a presumption of ownership. *Buck v. Gillham*, 80 Ark. App. 375, 96 S.W.3d 750 (2003). The law applicable to conversion of personal property also applies to instruments. Ark. Code Ann. § 4–3–420(a).

In the present case, appellant is accused of converting a check made payable to the Wilberts by having his signature signed to the check as an endorsement, which had previously forged endorsements on it. The signatures on the back of the check, signed as Dearel Wilbert and "Phyliss" Wilbert, which appellant deposited, were not those of either Dearel or Phyllis Wilbert. They were forged by someone. Appellant's signature, however, was endorsed by

4

his sister with his authorization. Appellant claims that his depositing the check was no different than what the third party did with respect to the real owner of the check in *Schaap v. State Nat'l Bank of Texarkana*, 137 Ark. 251, 208 S.W. 309 (1918), as the check in this case belonged to the Wilberts and no one else. He argues that no one else had a right to possess the check because the Wilberts had not given anyone a possessory right to it.

Also, appellant notes that appellee testified that she had no oral agreements with the Wilberts in this case. He cites *Southern Trust Co. v. American Bank of Commerce & Trust Co.*, 148 Ark. 283, 229 S.W. 1026 (1921), in which the Arkansas Supreme Court stated that "notwithstanding the fact that appellee made a mistake in giving the check to the wrong person, it paid the funds out to that person on the check, and it can not be said that the delivery of the check to another person would constitute a deposit of the funds in the name of the party to whom the original check belonged. By no process of reasoning can it be said under these circumstances that the true owner of the original check can affirm the receipt of the cashier's check by the imposter and thereby become the owner of the deposit." *Id*. at 288, 229 S.W. at 1028. Appellant submits that there was no testimony at all in the present case that appellee was the owner of the check that appellant had deposited.

Appellant argues that only the Wilberts were entitled to the check or the funds from the check because the check was made payable to them, and appellee had neither an ownership interest nor a possessory interest in either the check or the funds. The check that appellant deposited belonged to the Wilberts and was their property alone.

The elements of conversion require dominion and control over another's property. Appellant acknowledges that the Wilberts may have had a claim for conversion against him, but he asserts that appellee did not. Accordingly, appellant maintains that there was insufficient evidence that he converted the check.

We disagree and hold that, even though appellee's name was not on the check, she was the intended beneficiary of the proceeds of the check. The Wilberts laid no claim to any of the funds of that instrument and refused to sign or endorse the instrument because they had no right to negotiate the instrument because no value had been given for it. Appellee, however, did give value for the instrument, even though the instrument had not been put in her name. We hold that appellant was a forger on the instrument—because even though he did not personally forge the instrument, he authorized his sister to forge the instrument—and thus had no defense against the claim of conversion once the instrument had been forged and negotiated in his name.

Appellant's reliance on *Schaap*, *supra*, and *Southern Trust*, *supra*, in support of his contention that appellee was not the lawful owner of the check, and thus did not have standing to sue appellant for conversion, is misplaced. The holdings in both cases actually support appellee's right to sue appellant for conversion. In *Schaap*, *supra*, third party Slates had authority to collect checks on behalf of his principal, Schaap, but appropriated the negotiated funds for his own use rather than deliver them to the rightful owner. Even though the banks paid funds to Slates under a forged signature, the appellate court held that Schaap was entitled to recover on the instruments from the banks where they had been deposited under a forged

endorsement. More important, the court held that it was Schaap's interest in the proceeds collected on behalf of the instrument that gave him standing to sue the banks for recovery of the proceeds rather than his status as a payee of the instrument. *Schaap*, *supra*.

In *Southern Trust*, *supra*, one bank sued another for funds paid on fraudulently endorsed checks. The funds were paid in the form of a cashier's check made out to an imposter holding himself out as Sam W. Smith. Again, the supreme court distinguished between the rightful owner of the check and the party to whom the check was written and held that the real Sam W. Smith was, by all accounts, entitled to the funds drawn on the bank, and so he alone could look to the forger for reimbursement. *Id*.

Here there is no dispute that appellee was the beneficiary of the insurance policy. There is likewise no dispute that she endorsed the insurance check and forwarded it to Wells Fargo in settlement of the mortgage and that she was entitled to return of the excess proceeds. Although appellant states that he endorsed the check with the authorization of Mrs. Wilbert and that it was a gift from her, the record reflects that Mrs. Wilbert denied that assertion and stated that she specifically refused to sign the check at appellant's request and became angry at him. The jury did not believe appellant's testimony and found that he had converted the funds belonging to appellee.

In this case, the jury found that the check from Wells Fargo was never negotiated by either of the Wilberts, as payees of the check, or by appellee, the party entitled to the proceeds of that check. The jury found that appellant's defenses were not credible and that

appellee was entitled to funds deposited into appellant's bank account. Moreover, whether appellee met any of the criteria of section 4–3–420(a)(i) or (ii) was never argued by appellant.

We find no error in the jury's findings that (1) appellant was not authorized to have his sister endorse the check, deposit the check into his account, or use those funds for his personal use, and (2) appellee was the party entitled to those funds and that appellant's negotiation of the instrument was a conversion of property belonging to appellee even though she was not named as a payee by the drawing bank.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Michael F. Jones*, for appellant.

*The Henry Firm, P.A.*, by: *Matthew Henry*, for appellee.