### TIDD v STATE

Ohio Appeals, 4th Dist, Scioto Co

Decided Feb 23, 1932

Kimble & Kimble, Portsmouth, for plaintiff in error.

Cameron Meacham, Prosecuting Attorney, J. Julian Snyder, and William J. Meyer, Portsmouth, for the State.

**MIDDLETON, J.**

The first contention urged here by the defendant is that the verdict of the jury is not supported by sufficient evidence and was the result of passion and prejudice on the part of the jury. The record shows, and it is not disputed, that an examination by the department of the Auditor of State of the accounts of the defendant in the Municipal Court disclosed a deficit of more than two thousand dollars. The trial court in its general charge to the jury correctly instructed them, first, that if the defendant actually took money out of a public fund and knowingly applied it to her own use, or second, took money out of a public fund and delivered it to another person or persons for their use, taking worthless checks in return knowing them to be worthless, or third, knowingly loaned to any person public funds, and that in all or any one of the foregoing instances thereby caused the deficit, such acts or any one of them would be an unlawful conversion. We are persuaded, however, in view of the testimony of the defendant herself, that the trial court might well have added to the foregoing instruction a further instruction to the effect that if the defendant knowingly permitted another to take money from the cash drawer under her control and said party appropriated the money so taken to his own use it would be an unlawful conversion of said money by the defendant.

The prosecution rests upon the provisions of §12873 GC and that section provides in substance that any person charged with the care and control of public money who converts the same to his own use or to the use of any other person shall be guilty of embezzlement of the money so converted. The courts have interpreted the foregoing provisions to intend in their effect that it is a criminal conversion of public funds for an officer who is entrusted with the control and expenditure of such funds to use them for any purpose other than one provided by law. We find in the case of **State v Baxter**, 89 Oh St 269, that our Supreme Court has very clearly explained the intent of the statutes bearing upon this matter and in referring to such statutes said:

"It is the design and policy of that section and kindred statutes to prevent public officers and agents from using public funds in their possession or under their control in any manner or for any purpose not expressly authorized by law."

A similar interpretation of a like statutory law was made in the case of People v Warren, 122 Mich., 504, reported also in 80 Am. St. Rep. 582. In that case the court after quoting the Michigan statute, which has the same provisions as the Ohio statute, makes the following observation.

"It is the claim of the attorneys for respondent in relation to this statute that before one can come within its provisions, so as to make himself a felon, he must knowingly and unlawfully appropriate the money to his own use, or to the use of some other person, with an intent to so appropriate it as to forever exclude the rightful owner from its use and possession. We do not think the statute is susceptible of such construction. §9263c GC provides that the failure or refusal of any public officer to pay over and deliver to his successor all moneys and property which should be in his hands as such officer shall be prima facie evidence of the offense."

Continuing further the court says:

"The intention of the statute was to prevent any public official from using money or property coming to him in his official capacity for any purpose other than the purpose for which it came to him. If he does knowingly use it, or permits others to do so, for other purposes than the one for which it was intrusted to him, then he comes within the provisions of the statute."

And so in the instant case when the defendant by her own testimony undertook to explain in what way the deficiency occurred in her cash account she in legal effect was entering a plea of guilty to the indictment. By her own testimony she placed herself within the inhibition of the law by admitting that she knew when and in what manner the money was taken from her cash drawer. This does not mean that the evidence was not sufficient to support the verdict on any of the other grounds referred to by the court. It simply means that giving full credit to her explanation of the manner in which the public funds under her control and care disappeared and were taken by another or others she is guilty as charged in the indictment.

It should be observed, however, that her testimony was denied in all its material details by other witnesses, and particularly by the party whom she charges took the money and left as evidence of the taking either a worthless check or a memorandum in the way of a due bill. She testifies, however, that such actions continued through the whole time of her service, which was for more than two years. She says, therefore, that for two years she stood by with full knowledge that the party she charges was taking money and appropriating it to his own use. She gives no explanation of why during all that time she failed either to stop the unlawful taking or to compel the return of the money so taken. The explanation of her failure in this respect may be fully understood from her further statements of the relations between her and the party she accused, and those relations offer a full explanation of her default in not protecting the public money from the unlawful use of another person. Those relations, however, afford no defense. They only emphasize the criminal character of what was going on and why the deficit occurred.

We are therefore bound to hold that the verdict of the jury was not only fully supported by the evidence but that under the testimony of the defendant alone no different verdict was possible.

It is further contended that the court erred in excluding from the evidence certain written papers offered by the defendant. It is not exactly clear from the brief of counsel for the defendant whether this complaint include exhibits three and four or not. The contents of exhibit three went to the jury on cross examination of a witness. (Record, page 187). Exhibit four was admitted. (Record, page 174). Exhibit one, which was excluded, was a letter from the Auditor of State to the defendant and was properly excluded, as was exhibit two which was the written resignation of the defendant and a self-serving instrument in every respect.

The complaint of the unconstitutionality of §13444-25 GC has no place in this proceeding. The provisions of that section were not invoked by the state in the prosecution of the case. No claim was made or referred to of any prima facie evidence of embezzlement. While a transcript of the record of the examination of the defendant's accounts was admitted in evidence the party who made that record testified as a witness in the trial of the case and to the correctness of the record. Admitting, however, that the introduction of this record in the form that it was in was erroneous, yet as it contained nothing that was not fully established by other evidence its admission did not constitute such error as is required by the provisions of §13449-5 GC.

We find no error in the record and the judgment must be affirmed.

MAUCK, PJ, and BLOSSER, J, concur.